# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNATHAN WARREN,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:24-cv-00751-SAB<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 14, 18) |

## I.

## INTRODUCTION

Plaintiff Johnathan Warren ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") failed to develop the record by leaving the record open and failed to obtain a medical opinion of Plaintiff's mental and physical limitations, improperly relying upon his own lay interpretation of the medical data to incorporate work limitations based upon his review of Plaintiff's impairments.

For the reasons explained herein, the Court will reverse the decision of the Commissioner and remand to the agency for further proceedings.  42 U.S.C. 405(g).

## II.

## BACKGROUND

### A.    Procedural History

On August 22, 2019, Plaintiff protectively filed a Title XVI application for supplemental security income.  (ECF No. 11-10, Administrative Record ("AR"), 259-66.)  Plaintiff alleged disability beginning on October 1, 2006.  (Id.)  At the hearing, Plaintiff, through counsel, amended the alleged onset date to August 22, 2019, to match the protective filing date.  (AR 45.)  Plaintiff's application was initially denied on November 19, 2019, and denied upon reconsideration on April 20, 2020.  (AR 110-15, 121-26.)  On April 23, 2020, Plaintiff requested a hearing before an ALJ.  (See AR 127.)  On May 20, 2022, Plaintiff, represented by counsel, appeared for a telephonic hearing in front of an ALJ.  (Id.)  On May 31, 2022, the ALJ issued a decision concluding that Plaintiff was not disabled.  (AR 21-32.)  On April 25, 2023, the Appeals Council denied Plaintiff's request for review.  (AR 11-15.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 22, 2019, the application date.  (AR 24.)  The ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), hernia, hearing loss, cervical disc disease, obesity, schizoaffective disorder, bipolar disorder, and posttraumatic stress disorder ("PTSD").  (Id.)  However, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 25.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b)[1] except he can

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary

occasionally climb, balance, stoop, kneel, crouch, or crawl. He must avoid work that requires absolute binaural hearing. He must avoid concentrated exposure to respiratory irritants. He cannot have exposure to hazards such as unprotected heights and dangerous moving machinery. He can tolerate simple, routine, and repetitive tasks. He can tolerate frequent interaction with coworkers and supervisors. He can tolerate occasional interaction with the public. He can tolerate occasional changes in work routine.  (AR 27.)

The ALJ then found that that Plaintiff has no past relevant work, was 48 years old on the date the application was filed and has at least a high school education. (AR 30.)  The ALJ determined that transferability of job skills was not an issue to the determination of disability because Plaintiff does not have past relevant work.  (Id.)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (AR 30.)  Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from August 22, 2019, through the date of the decision, May 31, 2022.  (AR 31.)

Plaintiff sought timely review of the Commissioner's decision in federal court.  (ECF No. 1.)  The parties consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 9.)  Thereafter, the parties filed their briefs on the matter.[2]

### III.

### LEGAL STANDARD

#### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must

---

work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[2] On December 1, 2022, the Supplemental Rules for Social Security became effective.  Rule 5 states, "[t]he action is presented for decision by the parties' briefs."  Fed. R. Civ. P. Appx. Rule 5.  The 2022 Advisory Committee noted that "Rule 5 states the procedure for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules."  Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022.  Like an appeal, "the briefs present the action for decision on the merits.  This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record."  Id.  The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record."  Id.  Here, Plaintiff filed a motion for summary judgment and Defendant filed a response, which the Court construes as briefs in support of each party's position on whether the Court should affirm, modify, or reverse the decision of the Commissioner.  42 U.S.C. § 405(g).

show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including

---

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[4]  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'"  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

## B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024)

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not carry the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

(quoting <u>Ford</u>, 950 F.3d at 1154).  In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002) (quoting <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Should the ALJ err, the Court will not reverse where the error was harmless.  <u>Stout</u>, 454 F.3d at 1055-56.  "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'"  <u>Leach v. Kijakazi</u>, 70 F.4th 1251, 1255 (9th Cir. 2023) (quoting <u>Lambert v. Saul</u>, 980 F.3d 1266, 1278 (9th Cir. 2020)).  The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009)).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." <u>Hill v. Astrue</u>, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007); <u>see also</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003).  It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." <u>Ford</u>, 950 F.3d at 1154 (quoting <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to fully develop the record by (1) failing to leave the record open for updated evidence and (2) the ALJ failed to obtain a medical opinion of Plaintiff's mental and physical limitations.

**A.    The ALJ Did Not Err By Failing to Leave the Record Open**

Plaintiff argues the ALJ independently erred by failing to leave the record open for known

updated medical evidence following the May 20, 2022 hearing. (ECF No. 14 at 13-14.)  The Court

is unpersuaded that the ALJ's duty to further develop the record was triggered under these specific

circumstances. At the hearing, the ALJ asked Plaintiff's attorney if counsel had any objections to

the exhibits in the file, and she responded in the negative.  (AR 45.)  The ALJ then asked counsel if

the record was complete, and she confirmed it was. (Id.) However, during the ALJ's examination

of Plaintiff, Plaintiff intimated he was continuing treatment and additional records were

forthcoming.  For example, Plaintiff told the ALJ that he recently had an initial consultation (AR

50) and he "think[s he] got diagnosed with heart disease, [but he] won't know until next week…."

(AR 49.)  Plaintiff explained that he "ha[s] to see a pulmonologist for [his] lungs" and the doctor

who performed the initial consultation "said it's possibly it could be heart disease. And I have an

ultrasound next week, so."  (AR 50-51 (unedited).)  Plaintiff's counsel asked Plaintiff if he was

experiencing neck pain. (AR 54.) Plaintiff confirmed he was and stated he "just had x-rays done so

I will know like in a week. But yeah, it's probably like two slipped discs is what the x-ray

technician said that's possibly." (AR 54.)

At the conclusion of the hearing, the ALJ and counsel had the following discussion:

> ALJ: All right. Okay now, Counsel, I was not aware of the most
> recent medical evidence that your client mentioned. How difficult
> is it going to be –
> ATTY: The X-rays?
> ALJ: – to get those – well, yeah, he said that they're looking at
> potential heart problems and –
> ATTY: Well, I saw that, Your Honor, in the parole records but it
> looked like quite honestly it was in the mental health that they
> were talking about it which was really confusing. But it didn't –
> ALJ: Right.
> ATTY: – look like they were really doing anything about it now.
> So, I did see that they noted in the corrections and rehabilitation
> records that the social worker and the psychologist were talking
> about it. I think because the Amitriptyline caused some irregular
> heartbeats, but I don't know that –
> ALJ: Okay.
> ATTY: –-they're doing anything to treat.

(AR 65.) The ALJ then re-examined Plaintiff to ask about "very recent[]" records that discuss

concerns with Plaintiff's oxygen levels. (AR 65.) Plaintiff responded that his psychological

medications may have been causing his heart problems, his medications were cut in half within the

last three weeks, and he is no longer taking a particular medication.  (AR 65-66.)  The ALJ then

asked Plaintiff's counsel if they were waiting on any results. (Id.)  Plaintiff's counsel re-examined

Plaintiff, who clarified that he went to the ER and a cardiologist.  (Id.)  Plaintiff reiterated that he

was having an ultrasound and getting a referral to a pulmonologist.  (Id.)

Plaintiff, Plaintiff's counsel, and the ALJ then had the following discussion on the record:

> ATTY: So, it sounds like there aren't any tests to get at this point, Your Honor. I don't know if we –
> ALJ: Okay.
> ATTY: – want to wait till the 23rd –
> ALJ: Okay.
> ATTY: – because it will probably take us a couple weeks to get them if they haven't happened yet obviously.
> ALJ: All right. Counsel, I'm going to follow your lead. If you say that –
> ATTY: Okay.
> ALJ: –you don't need to wait on any additional records then I will close the record now and then I'll be able to deliberate and make a decision on the case. Is that what you would like for me to do –
> ATTY: Yeah –
> ALJ:-- Counsel?
> ATTY: – I think that's better, Your Honor. I'm just afraid, I don't want to hold up his claim. And –
> ALJ: Got you.
> ATTY: –by law they're given 30 days so it would be – we would be out another 30 days, and that's if the tests show anything.
> ALJ: Okay.
> ATTY: –if we get them back in the next - when he goes if he gets news that's very outside of the box, I'll definitely have my office write an immediate letter and see –
> ALJ: Okay.
> ATTY: if we get those submitted and –
> CLMT: I have an issue with time because of my MediCal–
> ATTY: Yeah.
> CLMT: – I have to get – everything has to be approved, so I'm getting three ultrasounds and then the heart monitor, but it could take up to two to six weeks just for the heart monitor.
> ATTY: Yeah, that's what I was worried about –
> CLMT: Yeah.
> ATTY: –yeah.
> ALJ: Got you, okay.
> CLMT: I agree with her.
> ALJ: All right, sounds good. Well, you two are on accord and that means I will honor your wishes, I will close the record.

(AR 67-69.)

In his opening brief, Plaintiff concedes that his counsel declined the ALJ's offer to hold

the record open to submit additional evidence at the May 20, 2022 hearing.  (ECF No. 14 at 14.)

Plaintiff, however, argues that the ALJ still erred because the discussion at the hearing did not

absolve the ALJ from his special duty "outside of counsel" to adequately develop the record.

1  (Id. (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("In Social Security cases the

2  ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's

3  interests are considered. This duty exists even when the claimant is represented by counsel.").

4        The Court is unpersuaded. It is Plaintiff's burden to establish disability. Terry v. Sullivan,

5  903 F.2d 1273, 1275 (9th Cir. 1990); 42 U.S.C. § 423(d)(5)(A). ("An individual shall not be

6  considered to be under a disability unless he furnishes such medical and other evidence of the

7  existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§

8  404.1512(a), 416.912(a) ("[Y]ou have to prove to us that you are ... disabled ...."). The ALJ

9  certainly has a special duty to fully and fairly develop the record. See Smolen, 80 F.3d at 1288.

10 However, the ALJ does not have a special duty to carry Plaintiff's burden, particularly where

11 Plaintiff's counsel, knowing additional testing and records were occurring, affirmatively

12 advocated that the ALJ close the record. Specifically, Plaintiff's counsel (1) confirmed the record

13 was complete; (2) declined the ALJ's offer to hold the record open by confirming it would be

14 "better" if the ALJ closed the record; (3) offered instead that if the upcoming results were "very

15 outside the box," she would "definitely have [her] office write an immediate letter" to request to

16 submit those records; and, uniquely, (4) had a conversation with her client on the record whereby

17 she and Plaintiff agreed to decline the ALJ's offer to hold the record open to avoid "hold[ing] up

18 [Plaintiff's] claim." (AR 45, 67-69.) Accepting that counsel and Plaintiff were "on accord," the

19 ALJ "honor[ed] [counsel and Plaintiff's] wishes." (AR 69.)

20        Under these circumstances, Plaintiff effectively asks the Court to impose a new extra

21 special duty on an ALJ by requiring that he or she function as the plaintiff's advocate and, in this

22 case, act as Plaintiff and Plaintiff's counsel's adversary. Plaintiff provides no authority to support

23 imposing such a duty on an ALJ. This Court declines to establish the requested burden-shifting

24 duty. See Collingswood-Bonse v. Colvin, No. 6:13-CV-01646-AA, 2015 WL 853063, at *3 (D.

25 Or. Feb. 24, 2015) (finding the ALJ's duty to more fully develop the record was not triggered

26 under the circumstances, which included the fact that the plaintiff was represented by counsel

27 who declined the ALJ's offer to hold the record open for further development); see also Maes v.

28 Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the

1   record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to

2   exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a

3   more exhaustive investigation.... To do so would contravene the principle that the ALJ is not

4   required to act as the claimant's advocate in order to meet his duty to develop the record.").

5       Here, Plaintiff's counsel confirmed the record was complete. (AR 45; see Giddings v.

6   Colvin, No. 1:13-CV-01477-SKO, 2015 WL 1020871, at *6 n.9 (E.D. Cal. Mar. 9, 2015)

7   ("Plaintiff's counsel's agreement to close the record at the time of the ALJ's hearing without

8   seeking to hold the record open to obtain treating physician opinions or requesting that a

9   consultative examination be obtained...diminishes the persuasiveness of Plaintiff's

10  argument...that the record was not fully developed."). Although the ALJ expressed his intent to

11  leave the record open for additional records, counsel and Plaintiff affirmatively declined the

12  ALJ's offer.  (AR 68.)  The Court does not find the ALJ erred in this case for the independent

13  premise that he failed to leave the record open.

14  **B.    The ALJ Erred by Independently Interpreting Medical Records and Failing
15         to Fully Develop the Record**

16      While this Court declines to create Plaintiff's requested new duty for ALJs, the ALJ has

17  an existing duty to ensure there is substantial evidence supporting his decision. Although

18  Plaintiff may have been better served if counsel did not confirm the record was complete,

19  affirmatively state it would be "better" not to wait on any additional records, and, with Plaintiff's

20  agreement, decline the ALJ's offer to leave the record open, any such oversight by Plaintiff's

21  counsel at the administrative level does not foreclose Plaintiff's primary challenge to the lack of

22  substantial evidence supporting the crafted MRFC and RFC.

23      With this in mind, the Court disagrees with Defendant's contention that Plaintiff's

24  argument that the ALJ erred by failing to develop the record in ways other than failing to leave

25  the record open was not preserved for appeal and is waived.  (ECF No. 19 at 5 (citing Meanel v.

26  Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999); Howard v. Astrue, 330 F. App'x 128, 130 (9th Cir.

27  2009)).)  As previously stated, "[t]he claimant has the burden of proving that she is disabled."

28  Smolen, 80 F.3d at 1288.  However, "[t]he ALJ always has a 'special duty to fully and fairly

1  develop the record and to assure that the claimant's interests are considered . . . even when the

2  claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)

3  (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  "[I]t is incumbent upon the ALJ

4  to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.

5  [The ALJ] must be especially diligent in ensuring that favorable as well as unfavorable facts and

6  circumstances are elicited." Id. (quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)).

7  Further, the ALJ's duty to develop the record fully is heightened where the claimant may be

8  mentally ill and thus unable to protect his own interests.  Tonapetyan v. Halter, 242 F.3d 1144,

9  1150 (9th Cir. 2001) (citing Higbee, 975 F.2d at 562).

10      The Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that

11  the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to

12  "conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at

13  1288).  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's

14  physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

15  the record open after the hearing to allow supplementation of the record." Id. (citations omitted).

16  Similarly, the regulations provide that the ALJ may order further consultative examination to

17  "resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to

18  support a determination or decision." See 20 C.F.R. § 416.919a.  Examples of situations under

19  which further developing the record may be required include when the additional evidence needed

20  is not contained in the records of the claimant's medical sources, and when highly technical or

21  specialized medical evidence not available from the claimant's medical sources is needed.  20

22  C.F.R. § 416.919a(b).  Once the duty to further develop the record is triggered, failure to do so

23  constitutes reversible error. See Tonapetyan, 242 F.3d at 1150-51.

24      This Court recently held that a claimant need not talismanically preserve the issue of the

25  ALJ's duty to develop the record at the administrative hearing in order for judicial review. Labuga

26  v. Comm'r of Soc. Sec., No. 1:24-cv-00890-SAB, 2025 WL 1911690, at *6 (E.D. Cal. July 11,

27  2025).  "[A]n ALJ is to be expected, without issue-specific prompting by the parties, to make the

28  predicate findings that are *necessary* under the governing five-step disability evaluation process to

1  support the conclusions that the ALJ makes." <u>Obrien v. Bisignano</u>, 142 F.4th 687, 699 (9th Cir.

2  2025) (emphasis in original).  The Court applies the same logic here.

3       With this in mind, the Court observes that regardless of Plaintiff's counsel's exhortation

4  that the ALJ close the record, the record may nonetheless be incomplete or ambiguous.  In this

5  vein, Plaintiff argues the ALJ erred by basing the RFC and MRFC on his own lay review of the

6  raw objective medical evidence of record after rejecting each of the medical opinions in the

7  record as unpersuasive.  (ECF No. 14 at 9-13.)  Plaintiff contends that, rather than sending

8  Plaintiff to a consultative examiner, calling a medical expert testify, or contacting Plaintiff's

9  treating physicians, the ALJ erred by "playing doctor" and taking it upon himself to use his lay

10 knowledge to review the entire raw medical record and formulate function-by-function RFC and

11 MRFC limitations. (<u>Id.</u>) In reply, Defendant argues that the RFC finding is not a medical finding

12 and the ALJ need not wholesale adopt all limitations found in a medical opinion.  (ECF No. 19 at

13 8.)  Defendant thus contends the ALJ fulfilled his role in determining the RFC by considering the

14 record as a whole and his conclusion therefore must be upheld.

15      The RFC is an assessment of an individual's ability to do sustained work-related physical

16 and mental activities in a work setting on a regular and continuing basis, which means eight

17 hours a day, for five days a week, or an equivalent work schedule.  <u>Titles II & XVI: Assessing</u>

18 <u>Residual Functional Capacity in Initial Claims</u>, SSR 96-9p, 1996 WL 374184, at *1 (S.S.A. July

19 2, 1996).  "The RFC assessment must first identify the individual's functional limitations or

20 restrictions and assess his or her work-related abilities on a function-by-function basis, including

21 the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945."  <u>Id.</u>  An "RFC

22 is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."

23 <u>Id.</u> (emphasis in original).  As Defendant here argues, it is true that a determination of RFC is not

24 a   medical   opinion,   but   a   legal   decision   that   is   expressly   reserved   for   the

25 Commissioner.  <u>See</u> (ECF No. 19 at 8); 20 C.F.R. §§ 414.927(d)(2) (RFC is not a medical

26 opinion), 414.946(c) (identifying the ALJ as responsible for determining RFC). "In determining

27 a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical

28 records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed

1  to a medically determinable impairment." Robbins, 466 F.3d at 883; see also 20 C.F.R. §

2  414.945(a)(3) (RFC determined based on all relevant medical and other evidence).

3       Further, when formulating an RFC, ALJ's have some discretion to perform independent

4  review of medical evidence and translate that evidence into functional terms. See Rounds v.

5  Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for

6  translating and incorporating clinical findings into a succinct RFC.").  For example, claimants

7  routinely receive continued care between the state agency physician's review at the

8  initial/reconsideration levels and the ALJ's subsequent hearing decision, thereby generating new

9  medical records.  However, this Court has previously rejected the proposition that an ALJ must

10  obtain a comprehensive consultative opinion in every case before rendering an RFC.  Scott T. C.

11  v. Comm'r of Soc. Sec., No. 1:23-cv-01776-SAB, 2025 WL 227288 (E.D. Cal. Jan. 17, 2025);

12  see also Meadows v. Saul, 807 F. App'x 643, 647 (9th Cir. 2020) (noting there "is always some

13  time lapse between a consultant's report and the ALJ hearing and decision, and the Social

14  Security regulations impose no limit on such a gap in time.").  With this in mind, an ALJ

15  cannot "substitute his own interpretations of medical records and data for medical

16  opinions" when determining a claimant's RFC.  Mack v. Saul, No. 18-cv-01287-DAD-BAM,

17  2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020).

18       1.    Mental RFC

19       The ALJ found both opinions of the state agency medical consultants unpersuasive and

20  thus relied on no medical opinions in assessing the MRFC.  (AR 30.)  At the initial level, Dr.

21  Ben G. Kessler, Psy.D. found on November 18, 2019, that "based on overall objective and

22  subjective evidence…with continuous adherence to psych [treatment] and meds," Plaintiff

23  retains the ability to perform unskilled work.  (AR 87-88.)  At the reconsideration level, Karen

24  Ying, M.D. found on March 4, 2022 that Plaintiff had fairly stable symptoms and would

25  continue to be stable with medications.  (AR 99-102)  In finding both these opinions

26  unpersuasive, the ALJ stated that Drs. Kessler and Ying "suggested that the claimant's mental

27  impairments were nonsevere and cause no more than mild restrictions [AR 87-88; 99-102]. This

28  is supportable and somewhat consistent with the claimant's routinely normal mental status

exams; however, it is not consistent with his need for regular ongoing treatment and management with high doses of medications." (AR 30.) The ALJ then went on to find Plaintiff can tolerate simple, routine, and repetitive tasks; frequent interaction with coworkers and supervisors; occasional interaction with the public; and occasional changes in work routine. (AR 27.)

Plaintiff argues the ALJ erred by conceding that he crafted the MRFC by taking it upon himself to use lay knowledge to determine function-by-function psychiatric limitations based on his independent review of the record absent any specificity of what evidence the ALJ considered and how he opined such evidence affected Plaintiff's psychiatric functionality. (ECF No. 14 at 10.) As stated above, the ALJ has a duty to develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Tonapetyan, 242 F.3d at 1150. The ALJ did not find that the record was inadequate, nor has Plaintiff pointed to any ambiguous evidence to support his argument that the duty to further develop the record arose. Rather, Plaintiff argues that there is no medical opinion that found Plaintiff to have moderate limitations or how those limitations would affect her ability to work which leaves a gap in the record.

Plaintiff argues the bevy of post-state agency consultant records included diagnoses and non-conservative prescription treatment that were not reviewed by any medical source.[5] (ECF No. 14 at 11.) Although Plaintiff argues that the ALJ requires some type of guidance from a healthcare professional, the RFC determination is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a

---

[5] The Court notes that Plaintiff details a January 16, 2020 psychiatric treatment note from Xavier Lara, M.D., documenting Plaintiff as experiencing moderate depression, that he continued to experience cycles of hypomania followed by depression possibly linked to taking two different antidepressants, requiring consideration of adjusting his dose of Elavil with his primary care physician and including raising the dosages of his anti-psychotic medication, Olanzapine. (ECF No. 14 at 12.) Contrary to Plaintiff's assertion, however, this January 16, 2020 record *was* evaluated at the reconsideration level by state agency consultants. (AR 100 (citing AR 913).) The consultants specifically noted that on this day, despite the above reporting, the consultant noted the following objective findings from the examination: "good [eye contact], cooperative, polite, fair hygiene, mood 'happy' affect full. [Thinking process] linear...reports a little bit of [auditory hallucinations] daily, psychosis good..." (AR 100.) Critically, this January 16, 2020 record also detailed Plaintiff's non-conservative prescription treatment of Elavil, Zyprexa, Remeron, and Vistaril, among others. (AR 912.) Plaintiff remained on these medications until they *reduced* them approximately three weeks before the May 2022 hearing before the ALJ. (AR 66.) In consideration of the January 16, 2020 record detailed at length by Plaintiff, the consultants—who were ultimately deemed unpersuasive—determined that Plaintiff's mental impairments were non-severe and caused no more than *mild* restrictions.

1   medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is

2   the responsibility of the ALJ, not the claimant's physician, to determine residual functional

3   capacity." Vertigan, 260 F.3d at 1049.  In making this determination, the ALJ must determine

4   credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. Andrews,

5   53 F.3d at 1039–40.

6          The Court disagrees with Plaintiff that the ALJ improperly formulated the function-by-

7   function MRFC using his lay knowledge. (ECF No. 14 at 11.)  Rather, the ALJ considered the

8   lack of objective mental findings in the mental health records and Plaintiff's regular ongoing

9   treatment to find him *more* limited than the state agency physicians opined: "While [Plaintiff]

10  has significant mental health treatment, the records generally describe him as doing well with a

11  high level of function and only minimal reported symptoms. The vast majority of his mental

12  status exams are essentially normal including good or euthymic moods, cooperative and polite

13  behavior, normal speech, intact memory, average intellectual function, and no apparent psychotic

14  symptoms or hallucinations (e.g.., [AR 598; 646; 649; 651; 866; 868-72; 875-77; 884; 890-91;

15  898; 901-02; 905; 911; 924])."  (AR 29.)  Based on these records spanning from September 24,

16  2019 through May 10, 2022, the ALJ determined that Plaintiff had severe mental impairments

17  causing no more than moderate limitations. (AR 26-27.) Plaintiff's self-reports that his

18  symptoms have been "manageable" (AR 905) and that he is "good" (AR 901), and Plaintiff's

19  physicians' objective observations that Plaintiff, for example, has normal memory (AR 898),

20  normal thought process (AR 901) and is cooperative (AR 905) is not evidence that is medical in

21  nature and not susceptible to a lay understanding.  See Saetern v. Comm'r of Soc. Sec., No. 1:24-

22  CV-01174-EPG, 2025 WL 1180160, at *5 (E.D. Cal. Apr. 23, 2025) (finding the ALJ's

23  assessment of Plaintiff's mental health conditions did not require medical expertise to

24  understand).  The Court finds that the ALJ did not interpret the raw medical records and "play[]

25  doctor" as alleged by Plaintiff, but the ALJ considered Plaintiff's subjective complaints, the

26  findings of a depressed mood, minimizing of anger issues, and auditory hallucinations (AR 29),

27  and largely normal mental status examination findings to determine that Plaintiff was *more*

28  limited than opined by the state agency physicians. See Nacoste-Harris v. Berryhill, 711 F. App'x

378, 378–80 (9th Cir. 2017) (The ALJ's inclusion of additional RFC limitations benefits, rather than prejudices, the claimant). Moreover, the ALJ relied on evidence other than the medical records, which did not require a medical opinion. For example, the ALJ considered Plaintiff's daily activities, including Plaintiff's report that he was attending truck driving school. (AR 29 (citing AR 872).)

Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation of his MRFC. The ALJ summarized the medical evidence in the record, including evidence related to Plaintiff's mental impairments, and determined Plaintiff's MRFC with the support of that record. The ALJ therefore fulfilled his responsibility to interpret the evidence of record. See Andrews, 53 F.3d at 1039. Plaintiff does not specify what additional functional limitations in the relatively benign objective findings were not accounted for in the ALJ's MRFC assessment. Plaintiff does not point to any new evidence in the record after the state agency physicians issued their opinions that would require further evaluation by a psychologist. Nor does he otherwise show any inconsistency between the evidence and his MRFC. See 20 C.F.R. § 416.919a. Indeed, as discussed above, the ALJ asked Plaintiff's attorney at the hearing if the record was complete, and she responded that it was. (AR 45.) Under these circumstances, the Court finds there was no duty to develop the record by obtaining a medical opinion as to Plaintiff's MRFC, as it was supported by substantial evidence.

2.    Physical RFC

The ALJ also found the opinions of state agency medical consultants, M. Yee M.D. and E. Steinsapir, M.D. unpersuasive and thus relied on no medical opinions in assessing the physical RFC. (AR 30.) At the initial level, Dr. Yee determined on November 8, 2019 that Plaintiff had exertional limitations including lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing and walking for a total of 6 hours in an 8 hour workday; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; should never climb ladders, ropes, or scaffolds; limited reaching but no overhead reaching; should not have a job that requires good hearing; and should avoid concentrated exposure to vibration and hazards. (AR 88-91.) Based on his analysis of the physical RFC factors, Dr. Yee found Plaintiff was

1  capable of light work. (AR 91-92.) The ALJ found Dr. Yee unpersuasive because Dr. Yee
2  "provided no analysis to support their decision opinion[]." (AR 10.)

3      At the reconsideration level, Dr. Steinsapir found on April 17, 2020, that Plaintiff had no
4  postural, manipulative, or visual limitations; had limitations in hearing in both ears and found
5  Plaintiff was not capable of work requiring absolute acuity of binaural hearing; should avoid
6  concentrated exposure to noise, hazards (specifically no unprotected heights), fumes, odors,
7  dusts, gases, and poor ventilation. (AR 103-07.) Based on his analysis of the physical RFC
8  factors, Dr. Steinsapir found Plaintiff was capable of work with environmental limitations only.
9  (AR 101.) In other words, Dr. Steinsapir found Plaintiff had no exertional limitations. The ALJ
10  found Dr. Steinsapir's findings unpersuasive because, although he found Dr. Steinsapir
11  supported his opinion with a reasonable analysis, "it was not fully consistent with additional
12  evidence that was received at the hearing level," including, "[f]or example, the new records" that
13  "showed some degree of cervical disc disease and hernia repair surgery, which would reasonably
14  contribute to cause exertional limitations." (AR 30.)

15      Plaintiff argues the ALJ erred by failing to cite to the particular "new records" and to
16  what degree the unspecified new records showed "some degree" of cervical disc disease and
17  hernia repair surgery. (ECF No. 14 at 10.) The Court finds the "new records" related to
18  Plaintiff's hernia and cervical spine that the ALJ is referring to are not as vague as Plaintiff
19  contends. Rather, in his summary of the records, the ALJ describes an April 27, 2020 ultrasound
20  of Plaintiff's abdomen finding "a right inguinal hernia with bowel content" (AR 836) and an
21  October 15, 2020 surgical note indicating that Plaintiff "underwent surgical hernia repair." (AR
22  29 (citing 839)). The ALJ also summarizes a February 9, 2021 x-ray of Plaintiff's cervical spine.
23  (AR 29 (citing 844)). At the May 20, 2022 hearing, the ALJ confirmed that each of these
24  described records were among those that were "loaded…into the system" on the day of the
25  hearing. (AR 45-46 (citing 834-861).).

26      Plaintiff's April 27, 2020 ultrasound, October 15, 2020 surgical note, and February 9,
27  2021 x-ray of Plaintiff's cervical spine took place *after* Dr. Yee's November 8, 2018 unreasoned
28  findings supporting "light work" and Dr. Steinsapir 's April 17, 2020 findings that Plaintiff had

1   no physical exertional limitations.  Accordingly, no medical expert reviewed such evidence, or

2   any other evidence dated after April 17, 2020.  Instead, the ALJ, based on an independent

3   interpretation of the evidence, rejected (1) Dr. Yee's opinion entirely as unsupported and (2) Dr.

4   Steinsapir 's opinion that Plaintiff had no exertional limitations (but limitations related to hearing

5   and concentrated hazards) *because* of the new records.  In place of a medical opinion regarding

6   what work-related restrictions would be appropriate, the ALJ interpreted the new records himself

7   and formulated an RFC that provided for the performance of less than a full range of light work.

8   (AR 27.)  In doing so, the Court finds the ALJ erred.

9          The ALJ specifically rejected Dr. Steinsapir's no exertional limitation opinion in favor of

10  the ALJ's own modified light work RFC because Dr. Steinsapir did not have the benefit of the

11  new records showing "some degree of cervical disc disease." (AR 30.) However, when

12  summarizing the records, the ALJ found the weight of the medical evidence does not support

13  greater restrictions than his assessed RFC finding because Plaintiff "has cervical disc disease, but

14  this was described as only mild." (AR 29 (citing 844).)  In support of <u>both</u> rejecting Dr.

15  Steinsapir's no limitation opinion and assessing the RFC, the ALJ referenced raw data in the

16  medical record: the radiologist's interpretation of Plaintiff's cervical spine. <u>Le MacKay v.</u>

17  <u>O'Malley</u>, No. 1:22-CV-01633-SKO, 2024 WL 169175, at *7 (E.D. Cal. Jan. 16, 2024) (noting

18  an ALJ errs in independently reviewing medical evidence when the evidence concerns "raw

19  medical data such as complex imaging findings or laboratory testing results."). While the

20  February 9, 2021 imaging studies of Plaintiff's cervical spine yielded findings such as "mild

21  spondylosis at C3-4 and C4-5" and "[s]mall anterior endplate osteophytes noted at C4 and C5"

22  (AR 844), there is no indication from the radiologist's interpretations what functional limitations

23  result from the diagnostic findings.  <u>See</u> <u>Heskett v. Bisignano</u>, No. 1:25-CV-00274-SKO, 2025

24  WL 1993698, at *6 (E.D. Cal. July 17, 2025) (noting that although imaging studies yielded

25  predominately mild findings, "it is not clear *what* functional limitations result from those clinical

26  findings" and thus the imaging records are the kinds of raw and ambiguous evidence that itself

27  does not provide sufficient indications of Plaintiff's physical functional limitations); <u>Howell v.</u>

28  <u>Kijakazi</u>, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (MRIs,

radiological studies, and X-rays "generally reflect only the findings, impressions, and medical diagnoses, which are difficult for a lay person to interpret."). In other words, there is no medical finding that "mild spondylosis at C3-4 and C4-5" and "[s]mall anterior endplate osteophytes noted at C4 and C5," in consideration of Plaintiff's other assessed physical limitations, translates to modified light work. (AR 844.)

The Court disagrees with Defendant's argument that because the ALJ was relying on a radiologist's interpretation of the findings, it was not unreasonable for the ALJ to conclude that the "mild" findings were not disabling enough to preclude all work. (ECF No. 19 at 10.) While this may be the ultimate determination, the ALJ is precluded from interpreting raw medical data and ambiguous evidence into a physical functional limitation. See Heskett, 2025 WL 1993698, at *6. Critically, the radiologist's interpretation of Plaintiff's cervical spine x-ray provided no indication of the impact that mild spondylosis or small osteophytes had on Plaintiff's ability to work on a function-by-function basis. See Mack, 2020 WL 2731032, at *2 (finding the ALJ improperly determined RFC after considering MRIs and radiological studies absent a doctor's opinion regarding the effect on plaintiff's ability to work on a function-by-function basis).

The ALJ rejected Dr. Steinsapir's finding of *no* physical limitations specifically because Dr. Steinsapir did not address Plaintiff's new cervical spine x-ray that showed "some degree" of cervical disc disease. Yet, using the same piece of evidence, the ALJ then determined that the RFC for modified light work accommodates Plaintiff's "cervical disc disease" because such impairment was "described as only mild." (AR 29.) The ALJ did not reference any functional assessment or medical opinion for such conclusion; rather he only cited the cervical spine x-ray report. Clearly, the ALJ's interpretation of Plaintiff's cervical spine x-ray report was a critical piece of evidence in the ALJ's RFC assessment; however, the ALJ personally interpreted the results and attempted to incorporate them into his RFC. The Court finds the ALJ erred in relying on his own lay interpretation of the cervical spine x-ray report, not a medical doctor's evaluation of the diagnosed impairments on Plaintiff's ability to work on a function-by-function basis.

The second proffered example supporting the ALJ's rejection of Dr. Steinsapir's no exertional limitation in favor of a modified light work RFC is Plaintiff's new records related to

1   his October 15, 2020 hernia repair surgery.  (AR 30.)  However, when summarizing the records,

2   the ALJ found the weight of the medical evidence does not support greater restrictions than his

3   assessed RFC finding because "while [Plaintiff] had a hernia, this was successfully treated with

4   surgery."  (AR 29 (citing AR 839).)  Notably, the October 15, 2020 operative report does not

5   indicate that Plaintiff's hernia was "successfully treated"; rather, the report details the operative

6   procedure and notes the operation was complete without any complications.  (AR 839.)  The ALJ

7   found Dr. Steinsapir's opinion unpersuasive because that Plaintiff had hernia repair surgery

8   "would reasonably contribute to cause exertional limitations."  (AR 30.)  Logic then follows that,

9   despite noting the assessed RFC was supported because the hernia was "successfully treated,"

10  the ALJ ascribed some unknown exertional limitation to the fact Plaintiff had hernia repair

11  surgery.  Notably, however, it does not appear from the record that Plaintiff received any further

12  treatment or made any related complaints post-surgery.  Nor does Plaintiff argue the record is

13  incomplete or ambiguous specifically related to the hernia repair surgery.

14       Plaintiff does argue, however, that the ALJ substituted his own interpretation of

15  Plaintiff's post-PAMF December 2, 2021 chest x-ray, which documented "hypoinflated but

16  clear" lungs and impressed "low lung volumes."  (AR 846.)  The ALJ discounted this raw data,

17  noting that "[o]ne chest x-ray noted low lung volumes, but other chest x-rays have been

18  unremarkable, showing clear lungs."  (AR 29; compare AR 846 with AR 838 (an October 15,

19  2020 chest x-ray finding no acute cardiopulmonary process) and AR 850 (an April 25, 2022

20  chest x-ray noted no acute cardiopulmonary pathology); see also AR 85 (noting a January 8,

21  2019 chest x-ray showed "no acute disease.")).  In explaining his RFC, the ALJ also noted that

22  "[t]here are no spirometry tests or other tests to clinically assess [Plaintiff's] pulmonary

23  function." (AR 29.) However, Plaintiff testified at the hearing that he had been referred to a

24  cardiologist, was having an ultrasound, and was getting a referral to a pulmonologist. (AR 65-

25  66.) Plaintiff confirmed as much in a May 2, 2022 psychiatric treatment progress report that he

26  was experiencing "heart problems" and that he would soon see a cardiologist.  (AR 867.)  None

27  of the records nor the three post-PAMF chest x-rays indicate the functional limitations caused by

28  Plaintiff's diagnosed chronic obstructive pulmonary disease. The record is clearly inadequate to

1  allow for proper evaluation of Plaintiff's functional limitations caused by COPD.  See
2  Tonapetyan, 242 F.3d at 1150.  Similar to Plaintiff's cervical spine x-rays, the ALJ used his lay
3  interpretation of Plaintiff's chest x-rays to support his assessed physical RFC that Plaintiff could
4  do modified light work and "must avoid concentrated exposure to respiratory irritants."  (AR 27.)

5       Defendant's argument that an ALJ may continue to rely on expert opinions even though
6  time elapsed and subsequent evidence entered the record misses the point of Plaintiff's motion.
7  (ECF No. 19 at 8-9.)  Here, Plaintiff argues the ALJ failed to rely on *any* medical opinion as he
8  found the only opinions related to Plaintiff's physical impairments unpersuasive. Defendant also
9  contends that although the ALJ labeled Drs. Yee and Steinsapir 's findings "unpersuasive," each
10 of the ALJ's RFC findings regarding physical limitations included their most restrictive findings.
11 (ECF No. 19 at 7.)  Defendant therefore requests that the Court find that the ALJ inferentially
12 concluded that Drs. Yee and Steinsapir's opinions were *partially* persuasive.  The Court declines
13 to identify reasons that could have been advanced by the ALJ for assessing the RFC but were
14 not.  The ALJ labeled both opinions unpersuasive without qualification and, most importantly,
15 did state any portion of the opinions that supported his RFC. See Treichler v. Comm'r of Soc.
16 Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (the court "cannot substitute our conclusions
17 for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").

18      Without a persuasive medical opinion to support the ALJ's assessed RFC, the Court finds
19 the ALJ's RFC lacks the support of substantial evidence.  The ALJ summarized the relevant
20 medical evidence and specifically noted there was a lack of evidence related to pulmonary
21 testing (AR 29); however, it is unclear how the ALJ translated that evidence into the assessed
22 modified light RFC. Notably missing from the ALJ's analysis is reference to any medical
23 findings indicating that, given the impairments identified in "new records," Plaintiff could indeed
24 perform work with a modified light level of exertional demand. The Court finds the lack of a
25 medical opinion that included consideration of the new raw medical data, coupled with the fact
26 that the ALJ knew Plaintiff was receiving additional studies and testing related to Plaintiff's
27 pulmonary functioning, triggered the ALJ's duty to further develop the record.  Tonapetyan, 242
28 F.3d at 1150.  The Court therefore concludes that the ALJ's physical RFC determination in this

1    case is not supported by substantial evidence.

2        Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is

3    harmless.  Stout, 454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the

4    [ALJ's] ultimate nondisability determinations."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th

5    Cir. 2008) (quotation and citation omitted); Tonapetyan, 242 F.3d at 1150-51 (once the duty to

6    further develop the record is triggered, failure to do so constitutes reversible error). While the ALJ

7    assigned physical limitations restricting Plaintiff to modified light work with additional limitations,

8    the RFC is still without supporting evidence.  Had the ALJ included different limitations in the

9    RFC based upon a proper review of the evidence and an adequate, fully developed record, the

10   ultimate disability determination may have been different.[6]  Heskett, 2025 WL 1993698, at *7.

11   Thus, the Court cannot find the ALJ's error is inconsequential to the ultimate nondisability

12   determinations.  Accordingly, the Court finds that remand for further proceedings is warranted.

13                                          **V.**

14                          **CONCLUSION AND ORDER**

15       For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the

16   Commissioner of Social Security is REVERSED and that this matter shall be REMANDED to the

17   Social Security Agency for further proceedings.  42 U.S.C. 405(g).  It is FURTHER ORDERED

18   that judgment be entered in favor of Plaintiff Johnathan Warren and against Defendant

19   Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

20

21   IT IS SO ORDERED.

22   Dated:  __**August 27, 2025**__

                                    STANLEY A. BOONE
23                                  United States Magistrate Judge

24

25

26

27   [6] This Court offers no opinion whether the disability determination will or should be different. It may be that a
     physician will review the post-PAMF medical records and agree that Plaintiff is capable of performing modified
28   light work, as the ALJ determined. However, because the ALJ chose not to develop the record by obtaining a
     medical opinion, this Court is unable to determine how the ALJ formulated Plaintiff's RFC determination.